UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICO M.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:24-cv-00196-GCS |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Plaintiff argues that the Administrative Law Judge ("ALJ") erred as a matter of law by failing to address Plaintiff's severe impairment of diabetic neuropathy in his Residual Functional Capacity ("RFC") assessment or otherwise explain why such limitations were excluded. (Doc. 16, p. 6). For the reasons stated below, the Court finds that the ALJ did not err in his assessment of Plaintiff's RFC.

## PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB and SSI on July 18, 2021. (Tr. 227-242, 258). The alleged onset date of his disability was June 15, 2021, when Plaintiff was

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* FED. R. CIV. PROC. 5.2(c) and the Advisory Committee Notes thereto.

forty-seven years and 10 months old. (Tr. 80). Plaintiff never obtained a high school diploma and previously worked as a custodian and kitchen worker. (Tr. 59, 264). His claims were initially denied on October 22, 2021, (Tr. 117-135), and upon reconsideration on June 22, 2021. (Tr. 138-152). A hearing was held on January 31, 2023. (Tr. 52-78). Both of Plaintiff's claims were denied by the Administrative Law Judge ("ALJ") on July 14, 2023. (Tr. 28-46). The Appeals Council denied Plaintiff's request for review on December 14, 2023, thus making the ALJ's denial the final agency decision subject to judicial review. (Tr. 1-3).

## ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following issue:

1. **Whether the ALJ's RFC assessment is legally erroneous in that it does not address Plaintiff's severe impairment of diabetic neuropathy, where the ALJ has not identified specific evidence with which the alleged and opined limitations caused by that impairment were purportedly deemed inconsistent:** Plaintiff argues that, despite finding that Plaintiff suffered from the severe impairment of diabetic peripheral neuropathy, the ALJ's RFC analysis did not account for any limitations resulting from the condition.

(Doc. 16, p. 6, 10).

## APPLICABLE LEGAL STANDARDS

To qualify for DIB, a Plaintiff must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his or her former occupation? and (5) Is the plaintiff unable to perform any other work? *See* 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *See Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme

Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

### THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above.

At Steps One and Two, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date through his date of last insured, such that he met the insured status requirements for Title II benefits through December 31, 2026. (Tr. 33).

At Step Three, the ALJ found that Plaintiff had severe impairments of paroxysmal atrial fibrillation, congestive heart failure, status post pulmonary embolism with cardiac arrest, coronary artery disease status post non-ST-elevation myocardial infarction and stenting, status post cerebrovascular accident, diabetes mellitus type II with vascular complications and peripheral neuropathy, and obesity, and non-severe impairments of hypertension, hyperlipidemia, osteopenia, and cellulitis of the right foot. (Tr. 34).

At Step Four, the ALJ determined that Plaintiff's impairments did not meet or

equal a listed impairment. (Tr. 34). As to Plaintiff's peripheral neuropathy not equaling a listed impairment, the ALJ reasoned that the evidence did not show Plaintiff had disorganization of motor function in two extremities which resulted in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use of the upper extremities. (Tr. 35) Neither did the evidence show, according to the ALJ, that Plaintiff had marked limitation in physical functioning or in mental functions. *Id.* Instead, the ALJ explained that the evidence showed Plaintiff was able to perform a full range of activities of daily living independently. *Id.*

Accordingly, the ALJ found that Plaintiff had the following RFC:

> [L]ight work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can never climb ladders, ropes, or scaffolds and can never balance as that term is defined in the Selected Characteristics of Occupations of the Dictionary of Occupational Titles. He can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. He can frequently handle and finger.

(Tr. 36). Based on his RFC, the ALJ found at Step 5 that Plaintiff was unable to perform past relevant work, but that there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 44-46). Accordingly, the ALJ found that Plaintiff was not disabled. (Tr. 46).

### THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating its decision. The following summary of the record is directed to the points raised by Plaintiff and is confined to the relevant time period.

**A.    Relevant Medical Records**

   *1.    Medical Examinations*

On June 9, 2021, Plaintiff met with his cardiologist, Toniya Singh, M.D. ("Dr. Singh"). (Tr. 514). At that appointment, Plaintiff complained of syncope, leg weakness which made it difficult to walk, and shortness of breath. *Id.* A little over one month later, on July 13, 2021—two days before the alleged onset date of his disability—Plaintiff had a follow-up appointment with Dr. Singh. (Tr. 509). At that appointment, Plaintiff used a cane to walk and again complained of shortness of breath, syncope, and weakness in legs which caused difficulty walking. (Tr. 509-511). Dr. Singh prescribed 100 mg of Gabapentin to be taken 3 times daily. (Tr. 512). Plaintiff had a second follow-up with Dr. Singh on August 10, 2021. (Tr. 504). He again complained of pain in his legs and feet and used a cane to walk. (Tr. 504-506). Dr. Singh increased Plaintiff's dose of Gabapentin to 300mg at nighttime. (Tr. 507). Plaintiff was to return in three months. *Id.*

On September 29, 2021, Plaintiff visited his primary care physician, Jowe Hsieh, M.D. ("Dr. Hsieh"). (Tr. 717). At that visit, Plaintiff complained of pain in his hands and feet and that he used a cane due to the pain. (Tr. 719). He noted that he was being treated for diabetic peripheral neuropathy with Gabapentin, but did not want to increase his dose or undergo a nerve conduction study, preferring to be referred to a neurologist. *Id.* Dr. Hsieh conducted a monofilament touch test and found impaired sensation on Plaintiff's right foot. *Id.* Dr. Hsieh considered Plaintiff's diabetes "well controlled." *Id.*

On November 9, 2021, Plaintiff had a follow-up visit with Dr. Singh. (Tr. 500). Plaintiff reported that he was doing well but experienced pain and neuropathy in his

hands and feet. (Tr. 500). Dr. Singh noted that Plaintiff used a cane to walk and had trace ankle swelling. (Tr. 500, 502). Plaintiff was to return for a follow-up in six months. (Tr. 503).

From December 17 to December 21, 2021, Plaintiff was hospitalized for cardiac issues. (Tr. 426). Upon intake, Plaintiff was assessed as not having a fall risk, impaired gait, or requiring the assistance of a mobility device. (Tr. 429). Plaintiff also reported that he had not suffered any fall-related injuries in the preceding three months. *Id.* Plaintiff did not have focal motor loss. (Tr. 452).

A week later, on December 28, 2021, Plaintiff visited his primary care physician, Dr. Hsieh. (Tr. 713). At that visit, Plaintiff complained of having pain in his hands and feet, needing to use a cane to walk, and that taking Gabapentin was not working. (Tr. 715). Dr. Hsieh prescribed 75 mg of Pregabalin to be taken twice daily. *Id.* Dr. Hsieh also resubmitted a referral for another neurologist due to Plaintiff's insurer not accepting the previous referral. *Id.*

On March 23, 2022, Plaintiff had a follow-up with Dr. Hsieh. (Tr. 709). Plaintiff reported that his blood sugar was "well controlled," but that he had not yet seen a neurologist due to more insurance issues. (Tr. 711).

On April 13, 2022, Plaintiff completed a pulmonary function test that Dr. Singh had ordered for him. (Tr. 829).

On May 10, 2022, Plaintiff had a follow-up visit with Dr. Singh. (Tr. 819). At that visit, Dr. Singh also evaluated the results of Plaintiff's pulmonary function test. (Tr. 820). She found "minimal obstructive airways disease [and] minimal neuromuscular disease."

*Id.* After Plaintiff reported issues with wearing tennis shoes due to foot pain, Dr. Singh recommended Plaintiff wear diabetic shoes. *Id.* Plaintiff walked with a cane. *Id.* Finally, during physical examination, Dr. Singh found Plaintiff's lungs clear and no sign of edema in his extremities. (Tr. 821).

On June 8, 2022, Plaintiff attended a consultative physical examination with internist Raymond Leung, M.D. ("Dr. Leung"), pursuant to his application for disability determination. (Tr. 520). Dr. Leung noted that Plaintiff brought a cane to the exam and was able to pick up a penny off the table with "both hands fairly well." (Tr. 522). Upon physical examination, Plaintiff was able to walk 50 feet unassisted and had a mild to moderate limp when not using his cane and a mild limp when using it in his left hand. (Tr. 523). Dr. Leung noted the following musculoskeletal observations: Plaintiff could tandem walk, hop, heel walk, toe walk, squat, showed full range of motion with no muscle atrophy or spasms, could oppose the thumb to each finger in both hands, had 4+/5 pinch strength and arm, leg, and grip strength, and had no difficulties getting on and off the exam table. *Id.* As to the state of Plaintiff's neurologic function, Dr. Leung observed that Plaintiff had sensation to light touch and pinprick in his hands, had no sensation to light touch in his feet but had intact sensation to pinprick, had mild decreased vibratory sensation in his feet and normal proprioception in his toes, and had no deep tendon reflexes in his right elbow or knees, but deep tendon reflexes were 2+ in his left elbow and ankles. *Id.* Dr. Leung noted no swelling in Plaintiff's lower extremities and had no respiratory distress. *Id.*

On June 24, 2022, Plaintiff again met with his primary care physician, Dr. Hsieh.

(Tr. 564). On physical examination, Dr. Hsieh noted that Plaintiff had no edema in his legs and no wheezing. (Tr. 566). Plaintiff noted that the Gabapentin was not working but would refill his pregabalin dose. (Tr. 567).

On July 28, 2022, Plaintiff met with Dr. Hsieh. (Tr. 559). Plaintiff complained of soreness and swelling for about one week in his right great toe, not due to injury. (Tr. 561). Plaintiff used a cane to walk. *Id.* Dr. Hsieh noted upon physical examination that Plaintiff had some swelling in his right great toe and legs, but no redness, opening, or drainage; he also had clear lungs. *Id.* Dr. Hsieh diagnosed Plaintiff with cellulitis in his right foot and ordered testing, an x-ray, and referred him to a podiatrist. *Id.*

On October 28, 2022, Plaintiff had another visit with Dr. Hsieh. (Tr. 555). Plaintiff noted he walked with a cane due to diabetic peripheral neuropathy in his hands and feet. (Tr. 557). Upon physical examination, Dr. Hsieh noted some swelling in Plaintiff's legs and feet and some impairment of sensation to the light touch on his right foot. (Tr. 557-558). Plaintiff's blood sugar had also spiked into diabetic levels, so he was given increased medications. (Tr. 557). Plaintiff still had not seen a neurologist due to insurance issues, so Dr. Hsieh stated he would submit another referral. (Tr. 558)

2. *Medical Opinion Evidence*

On October 19, 2021, state agency physician Elizabeth Paisley, M.D. ("Dr. Paisley"), reviewed Plaintiff's treatment records for disability determination. (Tr. 80-84, 86-90). Dr. Paisley found that Plaintiff's diabetes mellitus was a severe impairment. (Tr. 81, 87). For Plaintiff's RFC, Dr. Paisley determined that Plaintiff could occasionally lift or carry 20 pounds, frequently lift and carry 10 pounds, stand or walk or sit for a total of

about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday, and could occasionally climb ladders, ropes, and scaffolds, and frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. (Tr. 82-83, 88-89).

State agency physician Sandra Bilinsky, M.D. ("Dr. Bilinsky"), reviewed Plaintiff's additional medical records and consultative examination on June 16, 2022. (Tr. 92-100, 102-110). Dr. Bilinsky also found Plaintiff could perform light work. *Id.* She classified Plaintiff's peripheral neuropathy as a severe impairment. (Tr. 95, 105). Based on evidence from the additional medical records, Dr. Bilinsky recommended certain postural limitations that were stricter than Dr. Paisley's: occasionally climbing ramps and stairs but never climbing ladders, ropes, or scaffolds. (Tr. 97, 107). However, Dr. Bilinsky agreed with Dr. Paisley that Plaintiff could perform unlimited balancing, stooping, kneeling, crouching, and crawling. (Tr. 97-98, 107-108). Finally, when considering Plaintiff's impaired feet sensation, Dr. Bilinsky determined that Plaintiff should avoid concentrated exposure to environmental hazards like machinery and heights. (Tr. 97, 107).

On September 16, 2022, Plaintiff's cardiologist, Dr. Singh, submitted a "Disability Impairment Questionnaire." (Tr. 832-36). In the questionnaire, Dr. Singh indicated she had seen Plaintiff every three months from June 1, 2009, until their most recent visit on August 9, 2022. (Tr. 832). Dr. Singh only recorded Plaintiff's cardiac-related diagnoses and listed Plaintiff's primary symptoms as simply, "A-Fib palpitations." (Tr. 832-833). Dr. Singh declined to fill out the section of the questionnaire describing the nature, location, frequency, and what factors precipitate or aggravate Plaintiff's pain. (Tr. 833). Dr. Singh

opined Plaintiff could perform a job in a seated position for three hours and a standing or walking position for less than one hour. (Tr. 834). Dr. Singh indicated that Plaintiff could occasionally carry up to ten pounds and occasionally lift up to five pounds. *Id.* Dr. Singh noted that Plaintiff did not have significant limitations in reaching, handling, or fingers, and opined that he could grasp, turn, and twist objects occasionally in both hands, occasionally use his hands and fingers for fine manipulation in both hands, and could occasionally use his arms for reaching. (Tr. 835). She also noted Plaintiff was "unable to work [and] permanently disabled" and that his symptoms began in 2009. (Tr. 834, 836). Dr. Singh also concluded that Plaintiff's symptoms would likely not increase in a competitive work environment. (Tr. 835).

**B.     Evidentiary Hearing**

An evidentiary was held remotely on January 31, 2023. (Tr. 52). At that hearing, the ALJ asked Plaintiff about his twelfth-grade education and past work experiences cleaning car parts, as a casino kitchen worker, and as a janitor. (Tr. 59-64). Then, Plaintiff went on to testify regarding his medical conditions (Tr. 64).

In relevant part, Plaintiff stated that he had pain in his hands and feet and shortness of breath when walking short distances, balance issues, and swelling in his hands, ankles, and feet. (Tr. 64-66). He testified that he used a cane every day and could walk approximately three grocery store aisles before needing to rest. (Tr. 65-66). He stated that he has had issues with his feet and ankles since June 2021. (Tr. 67). When the ALJ asked about issues he experienced when using his hands, Plaintiff testified that he could use a toothbrush but was unable to use his hands due to pain for the majority of every

day. (Tr. 67-68). Additionally, Plaintiff testified he could sit in one position for 20 to 25 minutes, lift and carry up to 20 pounds without his cane, and 15 pounds with his cane. (Tr. 68-69). He stated he was able to do chores like vacuuming and washing dishes until he began to experience pain or shortness of breath and could otherwise complete self-care tasks like bathing, showering, and dressing. (Tr. 70). He claimed he had issues sleeping through the night in anticipation of experiencing pain upon waking. (Tr. 70-71).

As to his medication, Plaintiff stated that his Gabapentin was "band-aiding" the problem, but "not really helping." (Tr. 70). He claimed that Dr. Singh prescribed Lasix for the swelling in his hands and feet and had placed him on work restrictions. (Tr. 72-74).[2] Plaintiff also testified that he was unable to see a neurologist despite multiple referrals because the neurologists were "out of business or they wouldn't take [his] insurance." (Tr. 57-58).

A vocational expert ("VE") also testified at the hearing. (Tr. 73-77). She testified that of Plaintiff's past relevant work, he would be able to perform cleaner housekeeping as "generally performed" but not "necessarily as actually performed." (Tr. 74). She opined that Plaintiff could do light, unskilled occupations such as a marker, collator operator, and router. (Tr. 74). However, the VE noted that there would be "few, very few" occupations available if handling and fingering were reduced to occasional. (Tr. 75). That limitation, combined with usage of cane for balancing or support while standing and not ambulating or needing to elevate one's feet outside of normal breaks would "pretty much

---

[2]  The Court was unable to locate a prescription for Lasix in Plaintiff's treatment records. (Doc. 12-7).

eliminate[] work at the light level," according to the VE. *Id.* Additionally, the VE testified that if the individual were precluded from exposure to pulmonary or respiratory irritants, it would eliminate the cleaner housekeeping position, but not jobs in a clerical or office setting. (Tr. 77).

## DISCUSSION

Plaintiff contends that the ALJ erred in his RFC assessment by failing to address Plaintiff's severe impairment of diabetic neuropathy or otherwise identifying specific evidence which was inconsistent with that limitation and for finding additional physical limitations opined by Plaintiff's cardiologist, Dr. Singh, unpersuasive. (Doc. 16). In response, the Commissioner argues that the ALJ's findings were consistent with the record and that the ALJ cited substantial evidence in support of his assessment. (Doc. 20). For the reasons stated below, the Court agrees with the Commissioner.

The ALJ recounted evidence from Plaintiff's medical record and testimony as to his symptoms in detail, clearly building "an accurate and logical bridge from the evidence to [his] conclusion." *Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018) (internal citations and quotations omitted). After considering the record, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the medical evidence. *Id.* Nevertheless, Plaintiff argues that the ALJ committed legal error by failing to identify specific evidence which was inconsistent with Plaintiff's limitations. The Court disagrees, as the ALJ cited to specific, objective medical evidence which conflicted with Plaintiff's testimony as to his limitations to support his RFC.

First, as to Plaintiff's ability to walk and nerve pain, the ALJ reasoned that there was no clinical evidence supporting Plaintiff's use of the cane as medically necessarily and that his medical record was devoid of any mention of an abnormal gait aside from his consultative physical examination or any evidence that he had been treated for falls due to difficulty ambulating. (Tr. 42). Although Plaintiff testified that he experienced unbreakable pain in his hands and feet, the ALJ noted that he declined to undergo nerve conduction studies. *Id.* Furthermore, the ALJ doubted Plaintiff's diligence in following up for a neuropathy referral since more than two years had passed since his first referral. *Id.* Furthermore, the ALJ noted that Plaintiff indicated his Pregabalin (*i.e.*, Lyrica) was helpful in treating his neuropathy. *Id.*

Next, regarding Plaintiff's complaints of swelling, the ALJ highlighted that Plaintiff's examinations did not show significant findings of edema. (Tr. 42). The ALJ surmised, therefore, that Plaintiffs swelling was "largely controlled by prescribed treatment." *Id.* The ALJ also noted that there was no indication that Plaintiff needed to elevate his feet during the workday outside of normal breaks. *Id.* Finally, the ALJ noted that Plaintiff indicated he was able to participate in daily activities such as going out alone, driving, performing self-care tasks, shopping twice a week for 90 minutes, exercising, preparing simple meals, caring for his pet, cleaning and ironing, attending religious activities and spending time with grandchildren. *Id.* Such activities, according to the ALJ, were at odds with Plaintiff's testimony as to his disabling symptoms and limitations. *Id.* Contrary to Plaintiff's suggestion, therefore, the ALJ provided ample evidence which supported his decision to not include limitations as to Plaintiff's diabetic

neuropathy in the RFC.

Plaintiff also contends that the ALJ erred by finding Dr. Singh's medical opinions on Plaintiff's limitations unpersuasive. (Doc. 11, p. 10-11). Specifically, Plaintiff argues that the ALJ mischaracterized Dr. Singh's examinations as "benign" to manipulate evidence of Plaintiff's limitations and that Dr. Singh's opinions were consistent with Plaintiff's subjective reporting of his symptoms and the findings of Dr. Leung, the state agency's consultative examiner, who observed that Plaintiff had limited grip and pinch strength. *Id.* at p. 11.

Despite Plaintiff's assertions to the contrary, the Court finds that the ALJ adequately articulated his reasons for finding that Dr. Singh's questionnaire opinions were unsupported and inconsistent. An ALJ is only "required to incorporate limitations that she found supported by the evidence." *Alvarado v. Colvin*, 836 F.3d 744, 751 (7th Cir. 2016). Here, the ALJ noted that Dr. Singh's opinion was supported insofar as she was Plaintiff's treating cardiologist, but she otherwise failed to provide explanation to support her opinions and had internally inconsistent opinions. (Tr. 44). In relevant part, the ALJ found the following inconsistencies. First, Dr. Singh opined in her questionnaire that Plaintiff did not have significant limitations in reaching, handling, or fingering, but, at the same time, was limited to only occasional grasping, turning, and twisting objects, use of hands and fingers for fine manipulation, and overhead reaching. *Id.* Additionally, Dr. Singh's opinion that Plaintiff could only stand or walk for less than an hour out of an 8-hour workday was unsupported where she also noted no abnormal gait. Furthermore, although Dr. Singh noted Plaintiff used a cane to walk, the ALJ found his exams were

"essentially benign." *Id.* Dr. Singh's determination that Plaintiff did not need to elevate his legs while sitting but should nevertheless avoid continuous sitting for an 8-hour workday, was also inconsistent with Plaintiff's impairments and no significant findings of edema upon examination. *Id.* Finally, although Dr. Singh noted that her recommended limitations had been in place, including Plaintiff's inability to work, since 2009, Plaintiff had full-time employment until June 2021. *Id.* The above list of inconsistencies, which does not even include all of those identified by the ALJ, is clearly sufficient to support the ALJ's conclusion that the limitations opined by Dr. Singh were unpersuasive. *See, e.g.*, *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (stating that "[a]n ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician, . . . or when the treating physician's opinion is internally inconsistent, . . . as long as he 'minimally articulate[s] his reasons for crediting or rejecting evidence of disability[.]'") (internal citations omitted);

      In all, the ALJ gave multiple valid reasons for finding that the evidence did not completely support Plaintiff's allegations of disabling symptoms of diabetic neuropathy. Plaintiff's arguments are little more than an invitation for this Court to reweigh the evidence. However, this Court is not tasked with reevaluating the facts or reweighing the evidence to determine whether Plaintiff is disabled. *See Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). And, even if reasonable minds could differ as to whether Plaintiff's disability, this Court must affirm the ALJ's decision when supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester*, 920 F.3d at 510; *Shideler v.*

*Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). *See also* Harvey L. McCormick, 2 Soc. Sec. Claims & Proc. § 14:9 (6th ed. 2019) (stating that "[a]s a general rule, reviewing courts will not interfere with the Commissioner's resolution of conflicting evidence.")

## Conclusion

For the above-stated reasons, the Court **AFFIRMS** the Commissioner's denial of Plaintiff's claims and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  September 22, 2025.**

Digitally signed by Judge Sison
Date: 2025.09.22 15:16:40 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**